## RIGHT TO FREEDOM FROM NOISE IN A RESIDENCE NEIGHBORHOOD.

Common Pleas Court of Hamilton County.

STANLEY C. STALL v. GEORGE HILLMAN AND MARIE HILLMAN.*

Decided, June 2, 1914.

*Injunction Against Operation of a Factory—Establishment Under Protest in a Residence Neighborhood—Whether Such Business is a Nuisance—Depends Upon the Contiguity of the Thing Complained of and the Nature of the Vicinage.*

Injunction lies against the operation of a saw-mill and stair factory in an exclusively residence neighborhood, where the character of the neighborhood was well known to the owners of the plant before it was constructed and strong opposition was then shown to the establishment of such a plant in the neighborhood, but regardless of protests the mill was erected immediately adjoining plaintiff's home.

*A. C. Roudebush,* for plaintiff.
*Gusweiler & Klein,* contra.

COSGRAVE, J.

This is an action in which it is sought to restrain the defendants from carrying on a saw mill and stair factory immediately in the rear of plaintiff's property on Elvin avenue, South Norwood, Ohio.

The petition alleges that the plaintiff, since July, 1912, was a resident and owner of property on said avenue; that this avenue and all others in this immediate neighborhood and section of South Norwood are improved with costly and valuable buildings used exclusively for residence purposes, all being located in the Elsmere subdivision.

The petition further alleges that the defendants purchased a lot on Cavagna street, which joins plaintiff's lot in the rear; that in the summer of 1913, notwithstanding the protests and

*Affirmed, *Stall* v. *Hillman,* 20 C.C.(N.S.), ——.

objections of the plaintiff and other neighbors, they built upon the rear end of their lot a saw mill and stair factory within one and one-half feet of plaintiff's property and extending its entire width.

It is further alleged that since the completion of said factory the defendants have maintained and operated a 10 H. P. gasoline engine for operating saws and planers, and that in the conduct of said business defendants cause and produce loud, disturbing, annoying and disagreeable noises by sawing and planing lumber and by the running of the gas engine.

It is further alleged that said noises disturb the peace and quiet of said neighborhood; that said loud and disagreeable noises begin about seven o'clock in the morning and continue throughout the entire working day, and that after discontinuing the operation by the said engine the defendants oftentimes work with hammers until late at night; that by reason of said noises, the reasonable and comfortable use of his premises have become greatly impaired and his property diminished in value, and if permitted to continue, the property and that of other residents in the neighborhood will be further damaged and rendered unfit for residence purposes.

Issue was joined on the questions presented in the petition. Very many witnesses were examined on both sides. There was the usual and somewhat inevitable conflict in testimony that is ever present where varying sensibilities of men and women are involved. There are, however, some matters as to which there can be no reasonable question.

The testimony shows beyond doubt that the scene of this trouble was in a section of our sister city of Norwood devoted exclusively to residences. All or nearly all of the residences adjoining the premises complained of are occupied by young married people, the husbands being engaged in various pursuits, some in the city of Cincinnati and some in the city of Norwood. It appears that most, if not all, of these people, including the plaintiff, own their own residences and some others occupy their residences as tenants.

It is in evidence that these people, including the plaintiff, sought to obtain in this pleasant suburb that peace and quiet that is becoming more and more difficult to obtain in our larger city. They were seeking to escape noise and turmoil. They were fleeing from and not to noise. That was their right and privilege under the law.

At the time the plaintiff acquired his home, in July, 1912, it was immediately in the rear of the defendants' premises upon which the defendants had erected a costly and beautiful building which he had occupied as a place of residence and for no other purpose. In fact, at the time the plaintiff acquired his residence the territory radiating from the houses of both the defendant and the plaintiff, for about a distance of about a mile, in all directions, was exclusively used for residence purposes. All the buildings, so far as the testimony shows and so far as the court has been directed to same, were erected or were in process of erection, for residence purposes only, and this condition seems to continue to the present time, with the single exception of the premises of the defendants. No business of a noise-making character or of a nature to disturb the peace and quiet of the suburban residences above referred to were established until about the middle of the year 1913, and this is the one herein complained of.

At this time the evidence discloses the defendants started with the erection of the building in the rear of this home, the building not being of a character to be used for residence purposes. The plaintiff and others made objection to the municipal authorities of the city of Norwood. The objectors were informed that the mere erection was not in violation of the laws relating to such matters. While it might not have been commendable on the part of the defendants, it was not condemnable, under the law, until and unless its use might make it so.

It is in evidence that knowledge of this objection was brought home to the defendants at about the time they started the erection of this factory building. Nevertheless, they proceeded and installed therein a 10 H. P. gasoline engine, a buzz saw, band saw,

rip saw, planers and other appliances for the making of stairs and stairways by machinery. The very nature of the business proposed to be carried on by the defendants was bound to cause unusual and disturbing noises not theretofore existing in this neighborhood, and while there may have been some conflict as to the effect upon the plaintiff, his family and his neighbors, due to the varying sensibilities of people, nevertheless the testimony shows by a great preponderance of its weight that the operation of this factory plant would and did cause violent and unusual noises, disturbing the peace and quiet of the plaintiff in the use of his home and depriving him of the enjoyment thereof, to which he was entitled under the law.

This new use of their premises by the defendants was entirely inconsistent with the use of the front part of his beautiful residence, and equally inconsistent with the use of his property by this plaintiff and all his neighbors within the radius above mentioned.

It is in evidence that the defendants did not erect this factory building under any proper assumption that their neighbors acquiesced in their right to do so, as being a reasonable use of their premises under the circumstances. On the contrary, their protests constituted a sufficient warning to them that their neighbors resented and would resist its use for such purpose.

Before starting to use their premises in this manner, the defendants should have given heed to that instinctive suggestion that arises in the minds of all thoughful and neighborly men, that in order to have a good neighborhood, there must be good neighbors, having due regard to the rights of others and ever mindful that it is to the mutual interest of all to do nothing which would injure others. So well grounded is this instinctive suggestion as a rule of action for all right minded men, that for ages it has found expression in the maxim: "So use your own as not to injure another's property."

It is true that he who owns property or has the use of it, has certain rights which the law will protect and enforce, yet this property right is in very many instances and to a very great

extent limited and subject to the property and personal rights of others.   Just where to draw this line is at all times a most difficult matter.   There is no fixed standard or means of measurement which can be applied alike to all cases.   Each case must depend largely upon the facts and circumstances pertaining to it.

This court has made an exhaustive examination of a large number of decisions not only of our own courts, but of the courts of other states, and also text-books compiled by learned authors, in order to have all possible light and learning on this case and the questions herein involved.   After all, we may well accept the authority of our own Supreme Court laid down in the case of *Eller* v. *Koehler*, 68 Ohio St., page 51.   In that case the court refers to the well known case of *Columbus Gas Company* v. *Freeland*, 12 Ohio St., 392, in which it quotes approvingly the language of this latter case wherein it is said:

Syl. 1.   "What amount of annoyance or inconvenience will constitute a nuisance, being a question of degree, dependent on varying circumstances, can not be precisely defined."

In the Eller case, at page 55, the court say:

"In holding that what constitutes a nuisance can not be comprehended in an all-inclusive definition because of ever varying circumstances which may make that a nuisance in one case which is not one in another, this court merely embodied in terse phrase the universal experience of the courts."

On page 56 the court again says:

"Whether it be a cause of injury to real property or a case of personal annoyance or inconvenience, or of interference with the comfortable enjoyment of one's property, or whether the question be as to the existence of a nuisance or as to the extent of the alleged injury, or as to whether the defendant's act caused the injury and though the inquiry be before a chancellor or a jury, *the contiguity of the alleged nuisance to the plaintiff's property and the nature of the vicinage is always a pertinent circumstance to be considered.*

"For example, if one unnecessarily erects, maintains and operates a noisy, smoky machine shop or rolling mill in the midst

of a section of a city or town already wholly given up to residences, possibly many of them of elaborate design and great cost, there would be less excuse for the offender in so using his own property than if he had chosen a place which had been wholly or partly given up to trade and manufacture. *All that can be required of men who engage in lawful business is that they regard the fitness of locality.* In the residence sections of a city, business of no kind is desirable or welcome.''

Let us reverse the situation somewhat. Suppose the defendants had not used their premises as they have, but maintained it strictly for residence purposes, and the plaintiff erected and conducted a saw mill in the rear of his premises, and within a few feet of the defendant's rear line, and some of their other neighbors also attempted to carry on noisemaking occupations, interfering with the defendants in the comfortable enjoyment of their home, it almost goes without saying that the defendants would seek relief in the courts and it surely would be granted to them.

The change from a residence section to a manufacturing or business section is generally slow in development. It comes gradually, and apparently at least by the acquiescence of those owning property in such sections and who might be interested in restraining this change if they were disposed to do so. It is only where there is a general conviction in a community that the progress of events can no longer be withstood that this change takes place, and it is only then that the law will countenance a transition of a community from residence uses to manufacturing purposes. *This condition might well be designated as a general acquiescence by property owners in the district to such a change.*

If the rule were otherwise the beautiful suburbs of our own city and of our sister city of Norwood, of which we are all justly proud, would soon disappear from our midst. *This seems to be the rule in force throughout our whole country.*

The court, after a somewhat exhaustive examination of this question, has been unable to find a single instance such as the one at bar, where the courts have refused to restrain the operation of a manufacturing plant in a strictly residence district.

The court has withheld a deliverance of this question in the hope, which has proven to be a vain one, that the defendants themselves would realize the manifest unfitness of this location for manufacturing purposes and would have voluntarily removed their plant to that portion of our thrifty neighboring city devoted almost, if not exclusively, to manufacturing uses. There remains no doubt in the mind of the court that the use of this plant for the purposes carried on therein is a nuisance causing great personal annoyance and inconvenience and interfering with the comfortable enjoyment by the plaintiff and his family of his home, as set forth in the petition. The weight of the testimony admits of no doubt as to this in the mind of this court.

An injunction will therefore be granted enjoining the defendants from continuing the use of the building erected on the rear part of their premises for the purposes for which it is now used by them. In order to give the defendants an opportunity to complete any contract and finish any material they may have on hand for the purpose of being manufactured into stairs and stairways, the enforcement of this injunction will be stayed for twenty days.